**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**LOGAN DEMBOSKE,**

**Plaintiff,**

**v.**

**AUTRY GREER & SONS, INC.,**

**Defendant.**

CASE NO.: 3:23-cv-24717-MCR-HTC

---

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE DISCLOSURES AND PRECLUDE TESTIMONY OF PLAINTIFF'S EXPERT, DAVID COLLETTE

Plaintiff, **LOGAN DEMBOSKE,** by and through the undersigned attorney, pursuant to Rule 7.1(E) hereby files this response to Defendant's Motion to Strike Disclosures and Preclude Testimony of Plaintiff's Expert, David Collette. In support of this response, Plaintiff states as follows:

I.     PLAINTIFFS REASONING FOR REQUESTING AN EXTENSION OF DISCLOSURE DEADLINES WAS SOUND

Defendant AUTRY GREER & SONS, INC. (hereinafter DEFENDANT) claims, without merit, that counsel for Plaintiff LOGAN DEMBOSKE'S

(hereinafter PLAINTIFF) reasons proffered for the extension of the expert disclosure deadline in order for expert witness David Collette (hereinafter COLLETTE) to finalize his written report were "inaccurate" and therefore the witness testimony should be excluded.   DEFENDANT has relied on cherry-picked snippets of deposition testimony taken out of context in an attempt to paint the undersigned as having lied to this Court. Inexplicably, DEFENDANT has not provided this Court with the full version of COLLETTE'S transcribed deposition. DEFENDANT attached a copy of the aforementioned deposition as "Exhibit C" to the motion at issue. This exhibit consisted of only thirty-three pages when the deposition transcript in its entirety is approximately ninety pages of sworn testimony. The complete deposition transcript of COLLETTE is attached to this response as Plaintiff's **Exhibit 1**.

Per the sworn testimony, COLLETTE never tells testifies that he did not need the video to prepare a comprehensive and accurate report. To the contrary, COLLETTE stated the video was very beneficial and critical for developing his opinions in the instant case and went on to explain why in detail (*See* Plaintiff's **Exhibit 1**, 6:20-25; 7-14:1-4; 88-90:1). COLLETTE even clarifies that he had his initial report drafted, but once he confirmed there was indeed a video of the incident, he needed to see the video prior to finalizing his report (*See* Plaintiff's **Exhibit 1**, 13:21-25; 14:1-4).   DEFENDANT again goes on to misrepresent COLLETTE'S

testimony regarding the need to gain necessary information regarding the existence, or lack of, a reasonable standard of care in the detection and prevention of slip hazards on the Defendant's premises by way of studying the corporate representative's testimony. COLLETTE's testimony on this topic alone consisted of approximately fifteen consecutive pages (See Plaintiff's **Exhibit 1**, at 59-74). COLLETTE testified that the only information provided in DEFENDANT's discovery responses was an insufficient OSHA document that had nothing to do with slip hazard detection and prevention, and the corporate representatives testimony solidified the fact that there were no written or standardized policies or procedures regarding detection and prevention of slip hazards (See Plaintiff's **Exhibit 1**, 89:5-1, *See* also Plaintiff's **Exhibit 2**, testimony of DEFENDANT'S corporate representative Alexandra Wood). The fact that the DEFENDANT could not produce any written and uniform policy and protocol on the detection and prevention of slip hazards is both admissible and salient, and is fair game.  Had this protocol existed, COLLETTE could have considered it.  He should similarly be able to consider its absence.

DEFENDANT again goes on to misrepresent COLLETTE's testimony regarding whether the expert was aware of reporting deadlines in this matter. COLLETTE testified that, at the time of this deposition, he was traveling and was testifying by Zoom in his hotel room. COLLETTE had only received the

DEFENDANT's filed notice of deposition less than 48 hours before the deposition was scheduled while he was on the road and did not have access to any calendar or emails. He specifically testified he had no independent recollection of communications with the undersigned, not that these communications did not occur. Again, this line of questioning went on for approximately five consecutive pages of deposition testimony (See Plaintiff's **Exhibit 1**, 5-10:1-6; 87:3-25) which DEFENDANT avoided attaching to the motion at issue.

DEFENDANT also has not provided this Court with the complete version of PLAINTIFF'S transcribed deposition. DEFENDANT attached a copy of the aforementioned deposition as "Exhibit B" to the motion at issue. This exhibit consisted of only three pages when the deposition transcript in its entirety is approximately ninety pages of sworn testimony. The complete deposition transcript of Plaintiff Logan Demboske is attached to this response as Plaintiff's **Exhibit 3**.

DEFENDANT contends that the undersigned was somehow untruthful in her voiced concerns of the PLAINTIFF'S recollection of the location of the fall, and he may not be the best source of information for the expert witness to confirm the location of the fall for his final report and opinion. It is obvious that this issue is Plaintiff's counsel's own concern, and nothing was presented to this Court to indicate otherwise. Interestingly, DEFENDANT has produced an expert witness who intends to testify at trial that the PLAINTIFF was "under the influence of

marijuana at the time of the fall" but contends that the undersigned's concerns about pinpointing the location of the fall are unfounded, unproven or irrelevant. However, the complete and unaltered sworn testimony of both COLLETTE and PLAINTIFF demonstrate otherwise.

The undersigned did make mention that PLAINTIFF had travelled outside of the jurisdiction and was residing in Ohio. This is an honest mistake, as PLAINTIFF had expressed his plans to move to California, not Ohio. (See Plaintiff's Exhibit 2,93:9-21). Ohio is the home state of the expert witness, COLLETTE.

DEFENDANT also claims that because the expert's witness list and "case file" were not provided timely, that this expert should be stricken.  This is not a valid reason to exclude an expert's testimony. In reading the full and complete transcript of the expert witness COLLETTE, DEFENDANT was able to elicit bias testimony in spades. The DEFENDANT was not prejudiced in anyway by not physically having the documents prior to deposition. " A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive disclosure, and the producing party has established that the nondisclosure was harmless" *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010).

Based on the foregoing, DEFENDANT's request to strike disclosures should be denied.

## II. PLAINTIFF'S EXPERT WITNESS OPINIONS MEET THE STANDARD FOR ADMISSION

Plaintiffs' expert walkway auditor, David Collette (COLLETTE), has conducted professional walkway audits for more than eighteen years, and has been a college-educated engineer for more than thirty years. COLLETTE has a Bachelor of Science in Mechanical Engineering. He is qualified by formal training at the National Floor Safety Institute to be a Walkway Audit Certificate Holder and at the University of North Texas for Walkway Safety training to meet the requirements of ASTM F2948-13 "Guide for Walkway Auditor Qualifications". COLLETTE also has over eighteen years' experience in developing, launching, and auditing floor care programs within Unilever, JohnsonDiversey, Cintas, and Substratum Group. He has been a Board Member of the National Floor Safety Institute and a Main Committee Member for B101. He is a Member of ASTM, International Code Council, Illuminating Engineering Society, NFPA, ASSP, Association of Professional Engineers and Geoscientists of Manitoba (APEGM), a Fellow of the Claims and Litigation Management Alliance, and an adviser to the Storefront Safety Council. He is also a voting member of numerous technical safety committees and develops and teaches online and in-person educational courses regarding walkway safety, design, and slip resistance testing. A copy of COLLETTE's curriculum vitae is attached as

Plaintiff's **Exhibit 4**. It is undisputed that Mr. Collette has performed thousands of inspections and has extensive personal experience with everything he has testified about in the instant case, including the condition and maintenance of the walking surface at the location of Plaintiff's fall. COLLETTE's work is specialized, and related to inspecting walkways, both to proactively prevent slips and trips and to forensically identify how a fall occurred.

COLLETTE is not providing expert engineering opinions. He is providing opinions as a qualified walkway auditor with scientific, technical, and specialized knowledge based on facts and data that is the product of reliable principles and methods that he has used for more than a decade to provide walkway safety consulting to the likes of Walmart, McDonalds, and several other house-hold names. ASTM F2948 "Standard Guide to Walkway Auditor Qualifications" outlines what basic knowledge topics that a walkway auditor should consider when conducting audits of pedestrian walkways. The qualifications for a walkway auditor should include reasonable familiarity with guiding documents, sources for research, walkway tribometry, and walkway safety. This guide outlines topics for a walkway auditor training course intended to facilitate that familiarity. The standards referenced in F2948 include ANSI A1264.2, Standards for Slip Resistance and Prevention of Slip, Trip and Falls. Per COLLETTE's curriculum vitae and testimony, he is not only familiar with relevant guiding documents and sources for

research but is also an active member of numerous industry standards committees and organizations.

COLLETTE prepared a written report of his findings, which is also attached as Plaintiff's **Exhibit 5**.  He was asked to perform a physical inspection of the fall location and review all relevant information available in order to provide a forensic analysis and opinion regarding the Plaintiff's fall, including the cause. COLLETTE has issued the following expert opinions regarding the instant case: the walkway where Plaintiff slipped and fell was a dangerous condition and was more likely than not a cause of his incident and injury, and, this dangerous condition was caused by Defendant Greer's unreasonable standard of care that created a pedestrian slip hazard by not having defined and published procedures, policies, and employee and manager training programs on slip and fall hazard identification, walkway safety sweeps, spill/spot cleaning, and vendor stocking that resulted in a liquid contaminant on the floor finish-coated vinyl flooring.

COLLETTE has testified that a dangerous walking surface existed at the time Plaintiff fell and, contrary to Defendant's arguments, this opinion isn't solely based on slip-resistance testing and flooring choice. COLLETTE'S opinions are based on his own substantial training and experience, the thousands of inspections he has performed, professional experience with managing the walking surfaces and cleaning systems in hundreds upon hundreds of businesses. The opinion is also based on the

8

evidence in the instant case, including a review of sworn testimony, video surveillance of the fall itself plus footage of the fall location prior to the incident, slip-resistance readings, and a comparison of peer-reviewed walkway safety literature and widely accepted industry standards.

Defendant does not challenge COLLETTE'S qualifications as a qualified walkway auditor or expert witness. Instead, DEFENDANT claims, without merit, this Court must prevent COLLETTE from testifying because his opinions are not "scientific" and amount to the opinion of a lay person, his testimony was conflicting and confusing as to the basis of his opinions, his opinions were based on inaccurate or incomplete information, and his opinions are improper legal conclusion. Again, DEFENDANT has relied on cherry-picked snippets of deposition testimony taken out of context in an attempt to claim that COLLETTE only testified that "a wet floor is slippery" and that his testimony was unreliable and confusing due to semantics over "droplets" or "standing water".

COLLETTE testified as to the following in support of his opinions concerning the DEFENDANT's lacked defined and published procedures, policies, and employee and manager training programs on slip and fall hazard identification and prevention, walkway safety sweeps, spill/spot cleaning, and vendor stocking. Sworn testimony affirming the written opinions was elicited from COLLETTE, which failed to make its way into Defendant's motion (***See again***, **Plaintiff's Exhibit 1**).

COLLETTE's opinions and conclusions are also based on a foundation of extensive data and facts gathered at Defendant's location and through discovery. The data and facts include an inspection of the flooring system, video surveillance, the lack of adequate polices and protocol for spill detection and prevention on the premises, all of which he referred to repeatedly during his sworn testimony. DEFENDANT incorrectly asserts that that COLLETTE'S opinion is based on inaccurate or incomplete information. In reality, COLLETTE'S opinion is based on the lack of an appropriate policy and protocol in regards to the prevention and detection of hazards within the Defendant's premises.  The lack of a reliable and measurable protocol for the prevention and detection of a known hazard is the issue in this case and evidence of negligence. Plaintiff specifically requested information regarding this exact subject in both discovery requests and the deposition of the Defendant's Corporate Representative and it does not exist.

Federal Rule of  Evidence 702 explains that  witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony

is the product of reliable principles and methods; and **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court *Kumho Tire Co. v. Carmichael* 119 S.Ct. at 1178 clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.

    *Daubert* set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested---that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The Court in *Kumho* held that these factors might also be applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S.Ct. at 1175.

No attempt has been made to "codify" these specific factors. *Daubert* itself emphasized that the factors were neither exclusive nor dispositive. Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony. In addition to *Kumho*, 119 S.Ct. at 1175, *see Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in *Daubert* do not neatly apply to expert testimony from a sociologist). *See also Kannankeril v. Terminix Int'l, Inc*., 128 F.3d 802, 809 (3d Cir. 1997) ( holding that lack of peer review or publication was not dispositive where the expert's opinion was supported by "widely accepted scientific knowledge"). The standards set forth in the amendment are broad enough to require consideration of any or all of the specific *Daubert* factors where appropriate. Courts both before and after *Daubert* have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact. Part of *Daubert*'s flexibility includes the use of all, any, *or none* of the specific *Daubert* factors in any given case. Rule 702 expressly contemplates that the expert's opinion may be entirely based on training or experience. For example, the Advisory Committee Notes to F.R.E. 702 (2000 Amendments) recognize:

- An expert's testimony may be admissible on the *sole* basis of the expert's "experience alone—or experience in conjunction with other knowledge, skill, training or education";

- Excluding an expert's testimony under *Daubert* "is the exception rather than the rule"; and

- The appropriate means for challenging an expert's opinion is through "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."

The Advisory Committee Notes to F.R.E. 702 (2000 Amendments) state, in pertinent

part:

> **A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule**. *Daubert* did not work a "sea change over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). **As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means** of attacking shaky but admissible evidence." 509 U.S. at 595. Likewise, this amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert. *See Kumho Tire Co. v. Carmichael*, 119 S.Ct.1167, 1176 (1999) (noting that **the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted,** and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.").

> \*    \*    \*

> Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. **Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise**.

> \*    \*    \*

> **Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony.** To the contrary, **the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of**

**experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.** *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F.Supp. 1241, 1248 (M.D.La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1178 (1999) (stating that "**no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience**.").

(Advisory Committee Notes to F.R.E. 702, emphasis added)

COLLETTE's opinions and conclusions are based on "thousands of inspections" and analysis of the flooring in "hundreds and hundreds" of businesses, as well as objective data. The principles and methods utilized by expert witness COLLETTE in formulating his opinions are reliable and applied reliably to the facts of this case, this type of testimony should be admitted. COLLETTE has amply explained how his education, training and experience lead him to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience was reliably applied to the facts of this case. Therefore, COLLETTE'S testimony satisfies every one of these evidentiary requirements. Noted above, the walkway safety of the incident area inside the DEFENDANT'S premises is *the* dispute between the parties in this case. DEFENDANT has not produced any expert

testimony, affidavit, or other authority suggesting that COLLETTE's opinions and conclusions are *not* based on sufficient facts or data, or are *not* the product of reliable principals and methods, or that the expert has *not* applied principles and methods reliably to the facts of this case.

The appropriate way to test COLLETTE's opinions and conclusions is for DEFENDANT to conduct vigorous cross-examination and presentation of contrary evidence. Based on the foregoing, Defendant's Motion to Strike Disclosures and Preclude Testimony of Plaintiff's Expert, David Collette should be denied, and this matter should proceed to trial.

## CERTIFICATE OF WORD LIMIT

Pursuant to Local Rule 7.1(f), the undersigned counsel certifies that this Memorandum is 3,511 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 12, 2024, the foregoing document is being served on all counsel of record or pro se identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

## SERVICE LIST

Scott D. Stevens
Starnes Davis Florie LLP

15

11 N. Water Street, Suite 20290
Mobile, Alabama 36602
(251) 405-5067
Attorney for Defendants



**MORGAN & MORGAN, P.A.**


BY:   */s/ Evin Childs*
      **EVIN CHILDS**
      FL Bar No.:  64795
      **MORGAN & MORGAN**
      220 West Garden Street, Suite 900
      Pensacola, FL  32502
      Telephone:                850-876-7806
      Facsimile:  850-876-7830
      echilds@forthepeople.com
      dcohoon@forthepeople.com