April 26, 2024



# FORENSIC ANALYSIS AND OPINION

### Logan Demboske, Plaintiff

vs.

### Autry Greer & Sons, Inc., Defendant

### Case No: 3:23-CV-24717-MCR-HTC

### In The United States District Court
### Northern District of Florida
### Pensacola Division

**Prepared for:**
Ms. Evin Dyess Childs
Morgan & Morgan
220 West Garden Street, 9th Floor
Pensacola, FL
32502

**Prepared and Signed by:**
David Collette, WACH #31
Substratum Group
10663 Loveland Madeira Rd, #131
Loveland, OH
45140

Report Date: April 26, 2024

_____
**David Collette, WACH**

April 26, 2024

## Introduction

This document is my expert report in the matter of Logan Demboske [plaintiff] v. Autry Greer & Sons, Inc. [defendant]. The plaintiff is hereafter referred as "Demboske". The defendant is hereafter referred to as "Greer".

Morgan & Morgan has retained me, and I submit this report for the Plaintiff.

On January 30, 2023, at 10:45AM, Demboske was walking down an aisle in the Greer's CashSaver food retail location located at 4051 Barrancas Avenue, Pensacola, FL. As Demboske took a step on the vinyl floor, which was coated with floor finish, he stepped into a liquid contaminant, slipped, fell, and sustained injury.

## Scope of Report

I was asked to conduct an inspection of the incident location, review information regarding the incident provided to me, evaluate the safety of the incident location, and provide a forensic analysis and opinion of the incident.

I was asked to determine the cause of the incident which injured Demboske. I performed my analysis in this case using methods typically used by experts, consultants, and safety professionals engaged in walkway incident investigation and evaluation for slips, stumbles, trips, and falls on food retail walkways.

## Qualifications

I have a Bachelor of Science in Mechanical Engineering. I am qualified by formal training at the National Floor Safety Institute to be a Walkway Audit Certificate Holder (#31) and University of North Texas for Walkway Safety training to meet the requirements of ASTM F2948-13 "Guide for Walkway Auditor Qualifications". My qualifications are presented in my CV, submitted with this report.

My qualifications for undertaking this assignment include experience developing, executing, and evaluating walkway safety systems and programs for facilities, conducting research and training on the use of tribometers, evaluating flooring materials, developing standards to reduce the risk and cost of pedestrian incidents, and conducting site inspections and incident investigations which focus on the conformance or non-conformance with ordinances, codes, and standards. I frequently refer to local and state regulations, ordinances, and codes. I frequently refer to national safety and technical standards and other documents issued by the American National

Exhibit 5

April 26, 2024

Standards Institute (ANSI), ASTM International, International Code Council (ICC), the National Fire Protection Association (NFPA), National Floor Safety Institute (NFSI), Illuminating Engineering Society (IES), American Society of Safety Professionals (ASSP), and others. I frequently refer to risk control guidance documents and research published by organizations, insurance companies, and others.

I have 18+ years developing, launching, and auditing floor care programs within Unilever, JohnsonDiversey, Cintas, and Substratum Group. I have been a Board Member of the National Floor Safety Institute and a Main Committee Member for B101. I am a Member of ASTM, International Code Council (manages International Building Code), Illuminating Engineering Society, NFPA, ASSP, Association of Professional Engineers and Geoscientists of Manitoba (APEGM) pursuing my Professional Engineer designation, a Fellow of the Claims and Litigation Management Alliance, and an adviser to the Storefront Safety Council.

I am a voting member of the following technical committees:
- ANSI/NFSI B101.4 Test Method for Measuring the Wet Barefoot Condition of Surfaces (developing a barefoot standard for bathtubs, shower enclosures, pool decks, and walkways) (2019)
- ASTM D21 Polishes (manages D2047 standard) (2014)
- ASTM F06 Resilient Floor Coverings (2018)
- ASTM F08 Sports Equipment, Playing Surfaces, and Facilities (manages F1292 standard specification for impact attenuation of surfacing materials within the use zone of playground equipment) (2019)
- ASTM F12.1 Security Systems and Equipment (manages F3016 standard test method for vehicle impact protective devices at low speeds) (2020)
- ASTM F13 Pedestrian/Walkway Safety and Footwear (standards managed include F1637, F2508, F1646, F2948, F2966) (2014)
- ASTM F15.03 Consumer Products (manages F462 Safety Standards for Bathtubs and Shower Structures) (2016)
- D13 Textiles (manages bathmat specifications and testing, developing bathmat COF test standard) (2019)
- ANSI ASC A108 American National Specifications for the installation, test methods, and physical properties (manages A137.1 and A326.3) (2016)
- ASTM D01 Paint and Relating Coatings, Materials, and Applications (2023)

I develop and teach online and in-person courses including the 3-day in-person "Walkway Safety Professional" course (meets ASTM 2948), 3-hour online "Flooring: Design Considerations and Material Selection for Health, Safety, & Welfare" (approved by IDCEC as a CEU for Interior Designers), 1-day in-person "GS-1 Operator Certificate

April 26, 2024

Course Level 1 and 2", 1-hour online "American Slip Meter 825A Operator Certificate
Course Level 1", and the ½-day in-person "American Slip Meter 825A Operator
Certificate Course Level 1 and 2".

My opinions are formed based on my education, training, professional experience, an
onsite inspection, information provided to me, regulations, codes, and ordinances
enforced on the date of the incident, guiding documents and standards, and my
experience in design, maintenance, and inspection of food retail walkways.

I may find it appropriate to revise or supplement my opinions, analysis, and conclusions
stated herein in the future. I may have additional opinions and/or reasoning depending
on what is asked of me at deposition or trial.

## Expert Opinions and Basis for Opinions

The basis and reasons for my opinion(s) come from a combination of:
- My education, training, and experience in the field of designing, planning,
  building, lighting, and maintaining interior and exterior walkways
- My research and training courses regarding walkway management (walkway
  maintenance, walkway hazards, walkway auditing)
- My inspection of the incident location on February 5, 2024
- My knowledge of standards, guides, and practices related to the design and
  maintenance of interior and exterior walkway surfaces
- My experience in developing and executing floor maintenance programs for
  food retail including floor finish selection, daily and annual floor maintenance,
  spot/spill cleaning, wallcharts, and training materials
- The materials reviewed and information gathered, which are listed in this report

I state the following opinions to a reasonable degree of safety certainty and
probability:

1. The walkway where Demboske slipped and fell was a dangerous condition and
   was more likely than not a cause of his incident and injury.
2. This dangerous condition was caused by Greer's unreasonable standard of care
   that created a pedestrian slip hazard by Greer not having defined and published
   procedures, policies, and employee and manager training programs on slip and
   fall hazard identification, walkway safety sweeps, spill/spot cleaning, and vendor
   stocking that resulted in a liquid contaminant on the floor finish-coated vinyl
   flooring.

April 26, 2024

**Analysis of Hazard**

I inspected the incident location during the day on February 4, 2024. Exhibit 1, Images 1 and 2 are photos from my inspection of the incident aisle at Greer's. Images 3 to 5 are the test locations. Images 6 to 11 are screenshots from security video.

The aisle contains liquid products including sodas and chemicals. Security video shows a delivery of soda occurred just before Demboske's incident. At 10:23AM, a pallet jack full of soda was placed in the aisle as shown in Image 6. The pallet jack departed the aisle at 10:36AM. During that time a Greer's employee was in the aisle stocking shelves. After the pallet jack departed the aisle, the Greer's employee walked by the incident location twice. He first walked by at 10:39AM and then again at 10:42AM.

Image 10 shows Demboske after he had just fallen to the floor at 10:45AM. He then got up, walked to the shopping cart left behind by the Greer's employee, grabbed a piece of cardboard, and tried to wipe up the liquid that caused him to slip. Image 11 shows another Greer's employee mopping up the liquid on the floor.

I was not provided with information that identified the flooring material at Greer's. From my experience in specifying and maintaining floor finishes in food retail stores including Walmart, the flooring is vinyl composition tile coated with a floor finish. Floor finish specifications usually provide the dry static coefficient of friction (dry SCOF) value tested using ASTM D2047. D2047 is the "Standard Test Method for Static Coefficient of Friction of Polish-Coated Flooring Surfaces as Measured by the James Machine". If the dry SCOF measured using D2047 is ≥0.50, the floor finish manufacturer can advertise the floor finish as "slip resistant". This SCOF value is considered reasonably safe for walkways only when walked upon dry. The test is a dry measurement of slip resistance for a pedestrian wearing leather-soled shoes and does not test for slip resistance with a liquid contamination.

D2047, Section 1, Scope, states that the test method is not intended for use on wet surfaces. At the time of Demboske's incident, per his deposition, the flooring was not only wet but had a "puddle" on the surface which is a known pedestrian hazard.

The presence of moisture greatly affects the performance of a walking surface. Water on a floor is such a hazard that in commercial environments, like a food retail store, the standard of care is to conduct scheduled floor safety sweeps to look for contaminants on the floor. If liquid on the floor is found, the area is guarded from pedestrians until the contaminant is removed and the flooring is dry. While COF standards recognize it

April 26, 2024

is reasonably foreseeable a water spill may occur, standing water is identified as a condition that makes the walkway a pedestrian hazard regardless of measured COF.

During my inspection I measured the wet dynamic coefficient of friction (DCOF) and the surface roughness of the floor finish. I used ANSI A326.3 "American National Standard Test Method for Measuring Dynamic Coefficient of Friction of Hard Surface Materials" and an American Slip Meter 925 to measure DCOF. A326.3 is the standard used to design and specify ceramic and porcelain flooring material which is more than 30% of the flooring type installed in commercial buildings. A326.3 states that no flooring material should be walked upon wet below a value of 0.42 DCOF. A reasonable flooring material for a food retail store shall have a DCOF greater or equal to 0.42 but that the floor must be maintained and free of standing water or contaminants. As measured, the average DCOF for the three test locations was 0.48. Per standard, regardless of DCOF value, standing water is identified as a pedestrian hazard.

I used a Mitutoyo SJ-210 surface roughness meter and ISO 21920-2 (previously ISO 4287-1997) to measure surface roughness, Rz, in micrometers. As measured, the average Rz for the three test locations was 10.3. ASTM F3132 provides researched-based information on material selection for pedestrian safety. An Rz value below 10 micrometers is considered a high slip potential. A minimum Rz of 20 provides a low slip potential for contaminates like clean water, coffee, or soft drinks. A minimum Rz of 45 micrometers is recommended if the possible contaminants are soap solutions or milk. The hazard is increased if the pedestrian's footwear has little to no treads as the liquid separates the footwear from the floor surface and causes a slip. The hazard is the same as that encountered by a car when the tires hydroplane. Footwear without treads, like "slides" or "flip flops", are a reasonably foreseeable footwear in Florida.

The flooring material where Demboske slipped and fell was a hazard when wet.

Per City of Pensacola ordinances, Florida Building Code, Florida Fire Code, and Florida Accessibility Code was enforced. These codes discuss walking surfaces and hazards.

Florida Building Code is based on International Code Council (ICC) International Building Code (IBC). In IBC, Section 1003.4, Floor Surface, walking surfaces of the means of egress shall have a slip-resistant surface and be securely attached. IBC Code Commentary, an IBC edition with information used to develop standards of care, states that to minimize the hazard, all floor surfaces in the means of egress are required to be slip resistant. The use of hard floor materials with highly polished, glazed, glossy or finely finished surfaces should be avoided.

April 26, 2024

Commentary states that one method used to establish slip resistance is that the static coefficient of friction between leather [Type 1 (Vegetable Tanned) of Federal Specification KK-L-165C] and a floor surface is greater than 0.5. Laboratory test procedures, such as ASTM D 2047, can determine the static coefficient of resistance. Bulletin No. 4 titled "Surfaces" issued by the U.S. Architectural and Transportation Barriers Compliance Board (ATBCB or Access Board) contains further information regarding slip resistance.  D2047 can determine the static coefficient of friction but doesn't state that the value measured will be slip resistant under foreseeable conditions.

Bulletin No. 4 states that a slip-resistant surface provides sufficient frictional counterforce to the forces exerted in walking to permit safe ambulation. The presence of moisture will affect the slip resistance of installed surfaces.

Florida Accessibility Code states that floor and ground surfaces shall be stable, firm, and slip resistant. A slip-resistant surface provides sufficient frictional counterforce to the forces exerted in walking to permit safe ambulation.

Florida Fire Prevention Code incorporates NFPA 101 and is applied to all new and existing buildings. NFPA 101 states that all walking surfaces shall be slip resistant under foreseeable conditions. The foreseeable slip conditions are those that are likely to be present at the location of the walking surface during the use of the area. NFPA incorporates ASTM F1637 as an authoritative standard on slip resistance. F1637 states that walkway surfaces shall be slip resistant under expected environmental conditions and use. Interior walkways that are not slip resistant when wet shall be maintained dry during periods of pedestrian use. Floor finish is not slip resistant when wet. Policies, procedures, and training are required in foot retail locations to maintain dry floors during pedestrian use.

I was not provided with any documents or testimony that indicate Greer's had defined and published procedures, policies, and employee and manager training programs on slip and fall hazard identification, walkway safety sweeps, spill/spot cleaning, and vendor stocking. In her deposition, Wood, the corporate representative, stated that employee training was done at each store location and "on the job" by department managers. No information was provided on how and by whom department managers are trained. Wood said she didn't know how vendors get stock into the store, didn't know if vendors have a stocking policy and safety rules, that there are no policies and procedures for keeping the premises safe from slip/trip hazards, and that they do not do safety sweeps at any time during open hours as "everyone is looking at all times" for hazards.

April 26, 2024

In over 14 years of working with retail operations including Walmart, Target, and Walgreens, the standard of care for floor maintenance and pedestrian safety that I've encountered includes policies and procedures for cleaning the floors, safety sweeps, and spot/spill cleanup. I have been provided no information that these have been developed, published, and provided to employees and managers at Greer's.

In the video, the Greer's employee walks twice past the incident location. He does not seem to be looking at the floors as he walks and does not identify the pedestrian hazard where Demboske slipped and fell. He never returns to the incident location in the security video I was provided.

Demboske indicated the puddle was 2 ½' in diameter. In the security video, when the employee with the mop walks to the incident location he can be seen to immediately identify the location and starts to use the mop. While he expands his mopping to a much larger area, his initial mopping focus is about 9 square feet (based on 3 x 3 tiles (tiles are 1' square).

If Greer's had published procedures, polices and employee and manager training programs on slip and fall hazard identification, walkway safety sweeps, spill/spot cleaning, and vendor stocking more likely than not Demboske would not have slipped, fallen, and been injured.

April 26, 2024

## Information considered in formulating the above Opinions:

1. Knowledge, formal training and education, and experience including over 14 years of experience in developing, launching, and auditing interior and exterior walkways
2. Inspection, February 5, 2024
3. Complaint, 3rd Amended
4. Audio clip, Demboske
5. Incident Video, Greer's
6. Deposition, Alexandra Wood, Corporate Rep, April 19, 2024
7. Greer's Workplace Safety Rules
8. Plaintiff's Response to Interrogatories
9. Defendant Objections and Answers to Plaintiff's First Set of Interrogatories
10. City of Pensacola Ordinances, June 7, 2021 edition
11. U.S. Architectural and Transportation Barriers Compliance Board, Technical Report, NTIS Issue Number 199401, "Bulletin #4: Surfaces", 1993
12. Florida Accessibility Code 2020, 7th edition, 2020
13. Florida Fire Prevention Code, 7th edition, 2020
14. National Fire Prevention Association, NFPA 101
15. ASTM D2047-11, "Standard Test Method for Static Coefficient of Friction of Polish-Coated Flooring Surfaces as Measured by the James Machine"
16. ASTM F1637-19, "Standard Practice for Safe Walking Surfaces"
17. ASTM F1694-14, "Standard Guide for Composing Walkway Surface Investigation, Evaluation and Incident Report Forms for Slips, Stumbles, Trips, and Falls"
18. ASTM F1646-16, "Standard Terminology Relating to Walkway Safety and Footwear"
19. ASTM F2948-13, "Standard Guide to Walkway Auditor Qualifications"
20. ASTM F3132-20, "Standard Practice for Selection of Walkway Surfaces When Considering Pedestrian Safety"
21. ISO 21920-2:2021, "Geometrical Product Specifications, Surface Texture: Profile"
22. ANSI A326.3-21, "American National Standard Test Method for Measuring Dynamic Coefficient of Friction of Hard Surface Materials"
23. International Code Council A117.1-2009, "Accessible and Usable Buildings and Facilities, Standard and Commentary"
24. National Safety Council, Data Sheet 495, "Slips, trips and falls on floors", 2016
25. National Bureau of Standards, Research Paper RP1879, "Measurement of the Slipperiness of Walkway Surfaces", 1948

April 26, 2024

26. CNA Insurance, RC4280C, "Slip and Fall Study Report: Enhancing Floor Safety through Slip Resistance Testing, Maintenance Protocols and Risk Awareness", 2017

April 26, 2024

## Exhibit 1: Images of Incident Location

Image 1: Incident Location – February 5, 2024



Image 2: Incident Location – February 5, 2024



April 26, 2024

Image 3: Incident Location – Test Location 1



Image 4: Incident Location – Test Location 2



April 26, 2024

Image 5: Incident Location – Test Location 3



Image 6: Incident Location – Security Video – Pallet Jack Arrival – 10:23AM



April 26, 2024

Image 7: Incident Location – Security Video – Pallet Jack Departure – 10:36AM



Image 8: Incident Location – Security Video – Greer Employee – 10:39AM



April 26, 2024

Image 9: Incident Location – Security Video – Greer Employee – 10:42AM



April 26, 2024

Image 10: Incident Location – Security Video – Incident Location – 10:45AM



Image 11: Incident Location – Security Video – Greer Employee – 10:47AM

